612 A.2d 1021

Anthony MARINARI, Helen Marinari, his wife, Appellants,

v.

ASBESTOS CORPORATION, LTD. and GAF Corporation, a Delaware Corp. and Carey Canada, Inc. and the Celotex Corporation, Successor in Interest to Panacon Corporation and Philip Carey Manufacturing Company, Inc. and Raymark Industries, Inc. formerly Raybestos Manhattan and Eagle–Picher Industries, Inc. and Keene Corporation and Owens Corning Fiberglas Corporation and Armstrong World Industries, Inc. and Owens Illinois Glass Co. and Pittsburgh Corning Corp. and Charter Consolidated P.L.C. and Garlock and Melrath Gasket Company, Inc., wholly-owned subsidiary of Melrath Gasket Holding Company, Inc. a/k/a TNT Liquidating Co. and Melrath Gasket Holding Company, Inc. a/k/a TNT Liquidating Co. and Durabla and Anchor Packing Joseph Howell.

Superior Court of Pennsylvania.

Argued May 1, 1992.

Filed July 20, 1992.

Edward Rubin, Lansdale, for appellants.

Fredric L. Goldfein, Philadelphia, for Asbestos Corp., appellee.

Joseph W. McGuire, Philadelphia, for Owens Corning, appellee.

James F. Hammill, Cherry Hill, N.J. and Philadelphia, for Keene Corp. and Owens–Illinois, Inc.

Daniel G. Childs, Philadelphia, for Joseph Howell, amicus curiae.

Before ROWLEY, President Judge, and WIEAND, McEWEN, DEL SOLE, MONTEMURO, BECK, TAMILIA, KELLY and JOHNSON, JJ.

WIEAND, Judge:

The general issue in this asbestos exposure action is whether Pennsylvania, in the context of asbestos actions, shall be a one-disease or two-disease state. More specifically, the issue is whether the two year statute of limitations, 42 Pa.C.S. § 5524(2), bars an action for lung cancer where the action was filed within two years of the cancer diagnosis but four years after asymptomatic pleural thickening had been discovered on x-ray. After lengthy, careful consideration and research, we conclude that Pennsylvania must join a majority of jurisdictions which have adopted a "separate disease" rule in asbestos exposure actions. Plaintiff's discovery of a nonmalignant, asbestos related lung pathology, whether or not accompanied by clinical symptoms of impaired pulmonary function, does not trigger the statute of limitations with respect to an action for a later, separately diagnosed, disease of lung cancer.

Anthony Marinari worked as a laborer at the Philip Carey Manufacturing Company in 1928 and 1929 and at Alan Wood Steel from 1937 to 1972. He was allegedly exposed to asbestos dust at both workplaces. In 1983, a routine chest x-ray prior to hip replacement surgery revealed that Marinari had pleural thickening (diaphragmatic plaque-like pleural calcification). Marinari, however, was asymptomatic, i.e., he was not experiencing any discernible impairment of his lung function, and he elected not to pursue at that time an action to recover damages for the pleural thickening.

In July, 1987, Marinari was diagnosed as having lung cancer. In November of that year, he and his wife filed the present action for damages attributable to the cancer. In this action, the Marinaris did not seek to recover for the husband's pleural thickening or any non-malignant condition attributable to asbestos exposure. Marinari died on December 31, 1987, and the action has since been pursued by Helen Marinari, the executrix of her deceased husband's estate.

On May 23, 1990, the trial court, in response to defendants' motions for summary judgment, held that the claim was barred by the two year statute of limitations, 42 Pa.C.S. § 5524(2), and granted summary judgment in favor of all defendants. Plaintiff appealed.

"A motion for summary judgment may properly be granted only if the moving party has shown that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law." *Persik v. Nationwide Mutual Insurance Co.*, 382 Pa.Super. 29, 30–31, 554 A.2d 930, 931 (1989), citing *French v. United Parcel Service*, 377 Pa.Super. 366, 370, 547 A.2d 411, 414 (1988); *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 140, 476 A.2d 928, 930 (1984). Instantly, the material facts are not in dispute. The only issue is whether, as a matter of law, the claim for lung cancer filed in 1987 had accrued in 1983 when pleural thickening was initially diagnosed and, therefore, was barred by the two year statute of limitations.

The trial court, in an opinion by the Honorable Albert R. Subers, expressed agreement with plaintiff's contention that nonmalignant asbestos disease and cancer are separate diseases for which separate actions should be permitted. The court concluded, however, that it was constrained by the decision in *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984) (en banc) to hold that plaintiff's suit was time barred.

In *Cathcart v. Keene Industrial Insulation, supra,* the Superior Court affirmed summary judgment in favor of defendants because the action for pulmonary asbestosis had been filed more than two years after diagnosis of the disease. The Court specifically rejected plaintiffs' contention that pleural thickening, allegedly diagnosed one year after the asbestosis, gave rise to a separate cause of action. While the Court acknowledged that differences exist between pleural thickening and asbestosis, it nevertheless held that a second injury or separate complication arising from an original tortious act did not give rise to a separate cause of action. The *Cathcart* Court relied on the reason-

ing in *Shadle v. Pearce*, 287 Pa.Super. 436, 430 A.2d 683 (1981), and stated as follows:

> In *Shadle*, a dentist's failure to properly treat an abscessed tooth evidently caused the plaintiff to develop a heart condition known as bacterial endocarditis. When a valve transplant operation resulted in the plaintiff's apparent complete recovery, he decided not to sue the dentist. More than two years after the plaintiff learned that the dentist's negligence had caused his initial problem, the plaintiff developed an aortic aneurysm, which was evidently secondary to the valve transplant, and which rendered him totally incapacitated. In holding the claim for the second injury barred by the statute of limitations, the panel stated: "If we were to hold otherwise under the facts presented here, we would create a concept in the law which would permit an injured plaintiff to have a new limitations period commence for the initiation of an action for personal injuries as of the date when each complication or change in condition arose, despite the fact that no 'new' negligence has occurred which is attributable to the defendant. Such a concept would be contrary to the legislative intent inherent in the creation of periods of limitations in our law." 287 Pa.Super. at 441, 430 A.2d at 685–86.

*Cathcart v. Keene Industrial Insulation, supra* at 148–149, 471 A.2d at 506. See also: *Staiano v. Johns Manville Corp.*, 304 Pa.Super. 280, 296, 450 A.2d 681, 688 (1982) (dictum that pleural thickening and asbestosis are not separate diseases subject to different limitations periods). Under the rule applied in *Cathcart*, Marinari's cause of action for all present and future damages caused by asbestos exposure accrued at the time, in 1983, when pleural thickening was initially discovered. This rule, which has generally proven fair and workable in the context of actions for personal injury, has given rise to an unworkable process and a potential for unfair results in the context of asbestos

litigation.[1]

The rigid, single cause of action approach applied by the trial court in the instant case has been seriously eroded by the recent decision of the Superior Court in *Manzi v. H.K. Porter Co.*, 402 Pa.Super. 595, 587 A.2d 778 (1991). There, the Court held that it had been proper for a trial court to instruct a jury that if it should determine that plaintiff's "pleural thickening or pleural plaques are not compensable . . ., then if [plaintiff] gets cancer in the future, he can come back."

The approach to asbestos litigation suggested in *Manzi*, of allowing an action for nonmalignant asbestos disease and a separate action for cancer, we believe, represents the better view. In such actions, recovery can be had in a first action only for a disease which has already manifested itself from the exposure to asbestos and the natural, predictable progression, if any, of that disease. If additional injuries from a separate disease manifest themselves in the future, such injuries will support a second action.

This approach has been adopted by a majority of the jurisdictions which have confronted the special problems created by asbestos litigation. See: *Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315 (5th Cir.1986) (applying Louisiana law); *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111 (D.C.Cir.1982); *Fearson v. Johns–Manville Sales Corp.*, 525 F.Supp. 671 (D.D.C.1981); *Miller v. Armstrong World Industries, Inc.*, 817 P.2d 111 (Colo.1991); *Sheppard v. A.C. & S. Co.*, 498 A.2d 1126 (Del.Super.1985), *aff'd sub nom., Keene Corp. v. Sheppard*, 503 A.2d 192 (Del.1986); *Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517 (Fla. Dist.Ct.App.1985), *review denied*, 492 So.2d 1331 (Fla.1986); *VaSalle v. Celotex Corp.*, 161 Ill.App.3d 808, 113 Ill.Dec. 699, 515 N.E.2d 684 (1987); *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 492 A.2d 1286 (1985); *Pierce v. Johns–*

1. The urgent need for change in asbestos cases has been made strikingly apparent by the fact that appellees, Owens–Illinois Inc. and Keene Corp., as well as the trial court, have expressed agreement with appellant's contention that Pennsylvania should adopt a "two disease" rule.

*Manville Sales Corp.,* 296 Md. 656, 464 A.2d 1020 (1983); *Devlin v. Johns–Manville Sales Corp.,* 202 N.J.Super. 556, 495 A.2d 495 (Law.Div.1985); *Fusaro v. Porter–Hayden Co.,* 145 Misc.2d 911, 548 N.Y.S.2d 856 (N.Y.Sup.Ct.1989); *Potts v. Celotex Corp.* 796 S.W.2d 678 (Tenn.1990). See also: *Goodman v. Mead Johnson & Co.,* 534 F.2d 566 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977) (under New Jersey law plaintiff may assert separate actions for thrombophlebitis and cancer allegedly caused by same drug); *Martinez–Ferrer v. Richardson–Merrell, Inc.,* 105 Cal.App.3d 316, 164 Cal.Rptr. 591 (1980) (separate causes of action allowed for independent, non-simultaneous injuries of dermatitis and cataracts caused by same drug). Cf. *Anderson v. Sybron,* 165 Ga. App. 566, 353 S.E.2d 816, *aff'd,* 251 Ga. 593, 310 S.E.2d 232 (1983) (claim for cataracts allowed after plaintiff experienced other illnesses as result of exposure to same toxic gas, under theory of continuing tort); *Larson v. Johns–Manville Sales Corp.,* 427 Mich. 301, 399 N.W.2d 1 (1986) (discovery of asbestosis does not trigger statute of limitations on action for cancer); *LaVelle v. Owens Corning Fiberglas Corp.,* 30 Ohio Misc.2d 11, 507 N.E.2d 476 (1987) (Ohio courts have not decided whether to allow separate actions for malignant and nonmalignant diseases but evidence of increased risk of cancer held inadmissible in action for asbestosis). Contra: *Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129 (5th Cir.1985) (under Texas law, plaintiff has only one indivisible action for all damages—past, present and prospective—caused by asbestos exposure); *Joyce v. A.C. and S., Inc.,* 785 F.2d 1200 (4th Cir.1986) (under Virginia law, statute of limitation is triggered by manifestation of first asbestos related disease, and second action for separate, distinct and later occurring asbestos disease was untimely); *Matthews v. Celotex Corp.,* 569 F.Supp. 1539 (D.N.Dak.1983) (rejecting analysis in *Wilson v. Johns–Manville Sales Corp., supra,* court held only one suit may be brought for all damages arising from asbestos exposure); *Pecorino v. Raymark Industries, Inc.,* 763 S.W.2d 561 (Tex.App.1988).

Those jurisdictions which permit more than one action for separate asbestos related injuries have done so in recognition that asbestos exposure does not result in only one disease. The damage to the human body which may result from asbestos exposure does not occur as a seamless progression of a single pathology. Instead, exposure to asbestos may result in a variety of benign and malignant conditions, each of which may occur at widely divergent times. A non-exhaustive list and brief description of asbestos related diseases was recited by the Superior Court of Delaware in *Sheppard v. A.C. & S. Co., supra,* as follows:

I. **Nonmalignant diseases.**

    A. Pulmonary asbestosis/Parenchymal asbestosis.

    B. Asbestos-related pleural disease/Pleural asbestosis. Pleural thickening is one major development of asbestos-related pleural disease. Other manifestations ... include pleural effusion, hyaline plaques, and calcified plaques.

II. **Malignant diseases.**

    A. Lung cancer/Pulmonary carcinoma/Bronchogenic carcinoma.

    B. Mesothelioma (tumor of the mesothelial surface). Mansfield, **Asbestos: The cases and the Insurance Problem,** 15 Forum 860, 861–64 (1980);

.    .    .    .    .

The non-malignant diseases may result when the body reacts to the inhalation of asbestos fibers which become imbedded in lung or other tissue. The reaction consists of the body "walling off" the foreign matter with fibrous cells such that it eventually produces scar-like tissue which builds up over many years.

.    .    .    .    .

Pulmonary asbestosis or parenchymal asbestosis occurs within the lungs; pleural asbestosis occurs in the pleural cavity. Pleural thickening, one of the manifestations of pleural asbestosis, may occur independent of or in conjunction with pulmonary asbestosis. 15 Forum 860, 862–

863.  Each of the diseases, i.e., pulmonary asbestosis, asbestos-related pleural disease, lung cancer, and meso-thelioma, is recognized as a separate, and distinct disease.

*Id.,* 498 A.2d at 1128 n. 3, citing *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1083–1085 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).  See generally: J. Selikoff and D. Lee, *Asbestos and Disease* (1978); Special Project, *An Analysis of the Legal, Social, and Political Issues Raised by Asbestos Litigation,* 36 Vanderbilt Law Rev. 573 (1983).  One or more of these diseases may occur in any one person at various times because of differing and often prolonged periods between exposure and manifestation of the disease.  Thus, the diseases may be discovered at very different points in time.  J. Selikoff and D. Lee, *Asbestos and Disease, supra,* Chap. 10.

The problem in the context of asbestos litigation arises when, as in the instant case, the first manifestation of asbestos exposure is asymptomatic pleural thickening.  In the presence of such a sub-clinical condition, plaintiffs are able to lead normal lives, remaining active with no pain or suffering and without any loss of the use of an organ or disfigurement.  See: *Manzi v. H.K. Porter, supra* at 599, 587 A.2d at 780.  See also: *In Re Hawaii Federal Asbestos Cases,* 734 F.Supp. 1563, 1567 (D.Hawaii 1990).  Mild or asymptomatic pleural thickening, therefore, may not call for an award of compensatory damages.[2]  Nevertheless, plaintiffs in Pennsylvania, once informed of pleural thickening, have been required to act within the period of the applicable statute of limitations to make a claim for an asymptomatic condition and also for any and all predictable later diseases

---

2.  Where a harmful substance has produced only a physiologic reaction without actual functional impairment a trial court in New Jersey has questioned whether there exists an "injury" which will support a cause of action.  See, e.g.: *Ayers v. Jackson Township,* 189 N.J.Super. 561, 461 A.2d 184 (Law.Div.1983), *aff'd in part and rev'd in part on other grounds,* 106 N.J. 557, 525 A.2d 287 (1987).  The United States District Court in Hawaii has noted that a mere physiologic change without functional impairment may call for nothing more than nominal damages for a harmless but offensive contact.  *In Re Hawaii Federal Asbestos Cases, supra* at 1567 n. 7, citing Keeton.  *Prosser and Keeton on the Law of Torts,* § 9 at 40 (5th ed. 1985).

and/or injuries related to asbestos exposure. See: *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 437, 539 A.2d 871, 874 (1988) (plaintiff in asbestos action would be able to recover for his present injuries as well as for increased risk of cancer). See also: *Howell v. Celotex Corp.*, 904 F.2d 3, 5 (3d Cir.1990).

Because of the problems existing in the situation where a plaintiff has been pulled into court to seek large sums as compensation for anticipated future diseases, even before an existing condition has ripened into compensable injury, the strict single action doctrine was relaxed as early as 1982 by the United States Court of Appeals for the District of Columbia in *Wilson v. Johns–Manville Sales Corp., supra.* The *Wilson* court held that the occurrence of asbestosis did not necessarily trigger the running of the statute of limitations on all separate, and later manifested diseases, such as malignant mesothelioma, which had been engendered by the same asbestos exposure. The court reasoned that:

> Upon diagnosis of an initial illness, such as asbestosis, the injured party may not need or desire judicial relief. Other sources, such as workers' compensation or private insurance, may provide adequate recompense for the initial ailment. If no further disease ensues, the injured party would have no cause to litigate. However, if such a person is told that another, more serious disease may manifest itself later on, and that a remedy in court will be barred unless an anticipatory action is filed currently, there will be a powerful incentive to go to court, for the consequence of a wait-and-see approach to the commencement of litigation may be too severe to risk. Moreover, a plaintiff's representative in such a case may be motivated to protract and delay once in court so that the full story of his client's condition will be known before the case is set for trial.

> Our consideration of this appeal persuades us that a model or rule acceptable for more common personal injury actions may not be appropriate in latent disease cases. With respect to the statute of limitations issue before us,

we conclude that a potential defendant's interest in re-
pose is counterbalanced and outweighed by other factors,
including evidentiary considerations, securing fair com-
pensation for serious harm, and deterring uneconomical
anticipatory lawsuits. We therefore hold that the diagno-
sis of "mild asbestosis" received by Henry Wilson in
February 1973 did not start the clock on his right to sue
for the separate and distinct disease, mesothelioma, at-
tributable to the same asbestos exposure, but not mani-
fest until February 1978.

*Id.* at 120–121 (footnotes omitted). See also: *Fearson v.
Johns–Manville Sales Corp., supra* at 674; *Sheppard v.
A.C. & S. Co., supra* at 1133; *Smith v. Bethlehem Steel
Corp., supra* at 233, 492 A.2d at 1296; *Pierce v. Johns–
Manville Sales Corp., supra* at 666–667, 464 A.2d at 1027.

Other jurisdictions have recognized the likelihood of un-
fairly excessive or inadequate compensation because of the
inherently speculative nature of the evidence employed to
prove the possibility of future disease. The Florida District
Court of Appeals, in *Eagle–Picher Industries, Inc. v. Cox,
supra,* determined that evidence regarding a risk of future
disease is always unacceptably speculative. Therefore, the
court held that asbestos plaintiffs would not be permitted to
seek damages for risk of future disease but could assert a
second action for cancer if and when it occurred. The
Florida Court reasoned persuasively as follows:

Allowing recovery of risk of cancer damages not only
encourages anticipatory lawsuits but runs counter to the
desirable goal that cases be decided on the best quality
evidence available and that jury verdicts speak the truth.
Courts which have held that the statute of limitations for
asbestos-caused cancer begins to run when the cancer
was or should have been discovered, rather than when the
medically unrelated asbestosis was or should have been
discovered, have recognized that evidence in latent dis-
ease cases tends to improve over the course of time. As
the court in *Wilson* explained:

"[I]n situations involving the risk of manifestation of a latent disease, unlike the mine run of litigation, the evidentiary consideration counsels narrower delineation of the dimensions of a claim. Key issues to be litigated in a latent disease case are the existence of the disease, its proximate cause, and the resultant damage. Evidence relating to these issues tends to develop, rather than disappear, as time passes."

684 F.2d at 119.

.    .    .    .    .

The speculative nature of the prediction of future damages—that a person with asbestosis will someday contract cancer—may lead to several inequitable results. First, the plaintiff who does not contract cancer gets a windfall-cancer damages without cancer. *See Wilson v. Johns–Manville Sales Corp.*, 684 F.2d at 120 n. 45 (persons who contract asbestosis but not mesothelioma "will receive a windfall, and, in the aggregate, the defendant will overcompensate the injured class"). Second, and perhaps worse, an asbestosis plaintiff who is unsuccessful in his efforts to recover risk of cancer damages, but later contracts cancer, has the disease but no damages. Third, even plaintiffs who later contract cancer and who have recovered some amount of risk of cancer damages may emerge with an inequitable award, since the jury, cognizant of the less than one hundred percent chance that the plaintiff will contract cancer, likely will have awarded less than one hundred percent damages. Finally, inequitable awards are more likely to result from a future damages action simply because the damages cannot be known. If the disease has advanced—or even come into existence—the actual financial needs of the plaintiff can obviously be more accurately assessed. *See Wilson v. Johns–Manville Sales Corp.*, 684 F.2d at 119.

*Id.*, 481 So.2d at 523–524 (footnotes omitted).

A similar reasoning was employed by the United States Court of Appeals for the Fifth Circuit in *Hagerty v. L & L Marine Services, Inc., supra.* The plaintiff in *Hagerty* had

sued under The Jones Act for injuries resulting from a workplace accident involving a soaking with toxic, carcinogenic chemicals while loading a barge. Applying federal law, the Court held that plaintiff could not recover damages for an increased risk of developing cancer and that damages for cancer would only be available in a future action if and when the disease occurred. The *Hagerty* Court stated that:

> Even when there is evidence that the increased risk of cancer exceeds fifty percent, the rule does not work well. A plaintiff, if suffering any injury, is forced to seek cancer damages although the extent of those damages is yet highly speculative. They may be nothing at all because what was probable may not occur. The extent of the disease may be limited or the suffering and expenses may be enormous.

*Hagerty v. L & L Marine Services, Inc., supra* at 320.

We recognize that in Pennsylvania, courts have generally followed the rule that all claims against a defendant arising from a single transaction or occurrence must be asserted in a single action.. *Spinelli v. Maxwell,* 430 Pa. 478, 480–481, 243 A.2d 425, 427 (1968), citing *Fisher v. Hill,* 368 Pa. 53, 59–60, 81 A.2d 860, 864 (1951) and *Fields v. P.R.T. Co.,* 273 Pa. 282, 284, 117 A. 59, 60 (1922); *Hineline v. Stroudsburg Electric Supply Co.,* 402 Pa.Super. 178, 586 A.2d 455 (1991); *Epstein v. State Farm Mut. Ins. Co.,* 312 Pa.Super. 542, 459 A.2d 354 (1983). See also: Pa.R.C.P. 1020(d)(1) and (d)(4). The equation of a single, nondivisible action with the transaction or occurrence from which it arises comports with the now established trend toward a transaction based analysis of claims and away from defining a claim in terms of the theory of recovery or the identity of separate harms. See generally: Restatement (Second) of Judgments, § 24 comment a. By our decision today we do not denigrate or weaken this analytical approach. The prohibition against splitting a single cause of action is designed to prevent delay, additional expense and the waste of resources which follow when litigation is fragmented. The doctrine serves to further the important objectives of finality and judicial

economy. *Spinelli v. Maxwell, supra* at 481, 243 A.2d at 427; *Hineline v. Stroudsburg Electric Supply Co., supra* at 182, 586 A.2d at 456. See generally: 2 Goodrich–Amram 2d § 1020(d):1 (1991).

A strict transaction based analysis, however, must yield when the judicial objectives underlying the same are outweighed by the need to effect a just result based upon proof rather than upon sheer speculation. The adjudicative process must ultimately serve the principle that a fair and just resolution of disputes depends upon a search for truth, based on factual, non-speculative evidence (the integrity of the process). Litigation by an injured citizen against another citizen must result in a recovery of adequate compensation by the one and payment by the other of no more than fair and just compensation (the fairness of the result). In latent disease cases, such as the instant case, these principles of fair adjudication are not well served by the "rules developed against the relatively unsophisticated backdrops of barroom brawls, intersection collisions and slips and falls...." *Devlin v. Johns–Manville Corp., supra* at 569, 495 A.2d at 503, quoting *Martinez–Ferrer v. Richardson–Merrell, supra* at 324, 164 Cal.Rptr. at 595. Fair resolution of claims for latent asbestos disease requires that we adopt a more enlightened approach and move

> [a]way from a blind adherence to rigid concepts of what constitutes a cause of action and toward a set of rules which will enable plaintiffs to recover for just claims where that is possible without prejudice to defendants or insult to established rules of law, such as the merger aspect of the rule of res judicata.

*Martinez–Ferrer v. Richardson–Merrell, supra* at 327, 164 Cal.Rptr. at 597.

In order to accomplish just results in the resolution of claims for latent asbestos diseases, the rigid rules designed to limit plaintiffs to a single lawsuit must yield. Therefore, we today join a majority of jurisdictions which have responded to this difficult issue by holding that an asbestos plaintiff may assert, in a second lawsuit, a claim for a

distinct, separate disease if and when it develops at a later time.

In reaching this conclusion we have not adopted the argument that asymptomatic pleural thickening is insufficient injury, as a matter of law, to support a cause of action. In Pennsylvania, the Supreme Court has said that "injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Ayers v. Morgan,* 397 Pa. 282, 290, 154 A.2d 788, 792 (1959). See, e.g.: *Manzi v. H.K. Porter Co., supra* at 598, 587 A.2d at 779; *Pounds v. Lehman,* 384 Pa.Super. 358, 361, 558 A.2d 872, 873 (1989); *Corbett v. Weisband,* 380 Pa.Super. 292, 309, 551 A.2d 1059, 1068 (1988); *Bickford v. Joson,* 368 Pa.Super. 211, 214, 533 A.2d 1029, 1031 (1987); *Groover v. Riddle Memorial Hospital,* 357 Pa.Super. 420, 428, 516 A.2d 53, 57 (1986). The physiologic changes evidenced by pleural thickening are a clear indication that damage which is objective and ascertainable has occurred to tissues in the thoracic cavity. Hence, we conclude that pleural thickening, even when asymptomatic, is an injury which gives rise to a cause of action.

Instantly, a cause of action accrued in 1983 for pleural thickening when appellant's decedent was told that he had this condition. By his failure to file an action for pleural thickening within the two year period provided by the statute of limitations, the decedent waived only the cause of action for pleural thickening. The instant action is for cancer which was not discovered until 1987. This action is not barred by the statute of limitations. Therefore, defendants are not entitled to summary judgment.

Judgment reversed.