16 F.3d 408
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Rhonda Jean BARNES, Plaintiff-Appellant,
v.
SCHERING CORPORATION, a New Jersey corporation; Schering
Plough Corporation, a New Jersey corporation,
Defendants-Appellees.
 No. 93-1638.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 6, 1993.
Decided: Jan. 26, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Dennis W. Shedd, District Judge. (CA-91-3577)
 William Paul Walker, Jr., Walker, Morgan & Manning, Lexington, South Carolina, and Aaron M. Levine, Aaron M. Levine & Associates, Washington, D.C., for Appellant.
 Linda Trummer-Napolitano, Henry R. Simon, Law Offices of Henry R. Simon, White Plains, New York, and Jane T. Davis, Nelson, Mullins, Riley & Scarborough, Columbia, South Carolina, for Appellees.
 D.S.C.
 AFFIRMED.
 Before PHILLIPS and WILKINS, Circuit Judges, and KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Rhonda Jean Barnes brought this products liability action against Schering Corporation and Schering Plough Corporation (collectively, "Schering"), claiming that she was injured in utero from September 1951 to May 1952 as a result of her mother's ingestion of the prescription drug Dienestrol, a synthetic estrogen with a chemical composition similar to diethylstilbestrol (DES). The district court granted summary judgment in favor of Schering, ruling that Barnes' action was barred by the applicable statute of limitations. We agree and affirm the decision of the district court.
 
 I.
 
 2
 Barnes was aware by 1981 that her mother had taken DES to help prevent miscarriage during pregnancy. By October of that year, Barnes was experiencing numerous gynecological problems, including dyspareunia, dysmenorrhea, and postcoital bleeding. Over the course of the next several years, Barnes' treating gynecologist, Dr. James W. Stands, performed various tests and procedures, but he was not successful in controlling her pain. Notes from an examination performed by Dr. Stands in October 1983 reflect that Barnes was experiencing severe pelvic pain and dyspareunia secondary to DES.
 
 
 3
 In May 1984, pathologists read a PAP smear Barnes underwent as evincing carcinoma in situ, and she was referred to Dr. A. F. Haney at the Duke University Medical Center. Dr. Haney examined Barnes in July 1984 and determined that she did not have cancer. Barnes testified at her deposition that following this examination, Dr. Haney explained the structural abnormalities he discovered in her reproductive system and told her that, because of these problems, it would be very difficult for her to conceive or carry a child to term. In addition, Barnes testified that Dr. Haney discussed with her the association between these problems and DES exposure. A letter from Dr. Haney to Dr. Stands reporting on his examination of, and meeting with, Barnes states, "We held a long discussion regarding the nature of DES including structural changes in [portions of the reproductive system] and implications."
 
 
 4
 Although Barnes' symptoms persisted, she improved somewhat until November 1986, when her condition again began to deteriorate. Barnes unsuccessfully attempted to become pregnant during this period; however, the severity of her pain ultimately led her to undergo a hysterectomy in September 1989. She brought this products liability action in November 1991, invoking the diversity jurisdiction of the district court.
 
 
 5
 The district court granted Schering's motion for summary judgment, holding that, viewed in the light most favorable to Barnes, the evidence was susceptible only to the conclusion that Barnes knew or should have known that she had been injured as a result of DES exposure at least by July 1984. Accordingly, Barnes' action was not timely filed within the six-year statute of limitations. Barnes now appeals.
 
 II.
 
 6
 Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985). The nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the forecast evidence, Ross, 759 F.2d at 364, but it "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). The essence of the inquiry the court must make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Summary judgment is proper "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." Id. at 248. We review de novo the decision of the district court to grant summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988).
 
 
 7
 The parties agree that South Carolina law governs this action and that the applicable limitations period is contained in S.C.Code Ann. Secs. 15-3-530(5), -535 (Law. Co-op.1977 & Supp.1992). These statutes provide that this lawsuit must "be commenced within six years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action." Because a statute of limitations may bar prosecution of an otherwise meritorious claim, its application in a given circumstance may appear harsh. Nevertheless,
 
 
 8
 [s]uch statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."
 
 
 9
 Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 428 (1965) (quoting Order of R.R. Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49 (1944)). The applicable South Carolina statute is particularly lenient because it permits a plaintiff to file a claim up to six years after he knew or through the exercise of reasonable diligence should have discovered that he had a cause of action. Thus, the question before the court is whether, viewed in the light most favorable to Barnes, the evidence raises a genuine issue of material fact concerning whether she knew or in the exercise of reasonable diligence should have discovered that she had a cause of action prior to November 1985.
 
 A.
 
 10
 Barnes maintains that the reasonable inferences that may be drawn from the record do not establish conclusively that her action is untimely. She admits that by 1984 she knew that she had gynecological problems and that she had been exposed to DES. She contends, however, that she did not know that these problems were a consequence of DES exposure. In addition, Barnes claims that her deposition testimony to the effect that Dr. Haney did notify her of the causal connection between her difficulties and DES exposure was merely a misstatement on her part.
 
 
 11
 In our opinion, even viewed in the light most favorable to Barnes, her deposition testimony and the letter from Dr. Haney establish that she knew or through the exercise of reasonable diligence should have discovered that she had a cause of action following Dr. Haney's examination of her in July 1984. At the very least, Barnes' deposition testimony reveals that Dr. Haney told her she had physical abnormalities and that they discussed DES. Further, the letter from Dr. Haney to Barnes' treating physician relates that Dr. Haney discussed with Barnes "the nature of DES problems including structural changes." The letter continues by describing the structural abnormalities he observed, noting that one such anomaly is common in DES patients, and opining that DES likely accounted for his observation of this condition in Barnes. Even if Barnes was not actually informed of the causal link between her gynecological problems and DES exposure, the meeting with Dr. Haney was sufficient to place her on notice of the possibility that her problems were caused by DES, and reasonable investigation would have disclosed Dr. Haney's opinion on the subject. See Snell v. Columbia Gun Exchange, Inc., 278 S.E.2d 333, 334 (S.C.1981) (per curiam). Thus, we agree with the district court that this evidence is susceptible of only one reasonable conclusion--that Barnes knew or should have known that she had a cause of action no later than July 1984.
 
 B.
 
 12
 Barnes also argues that even if this court decides that by 1984 she knew or should have known that she had structural abnormalities caused by DES, she did not know and could not have known that she would have to undergo a hysterectomy. She concludes that this is a "new" injury, giving rise to a new cause of action. We disagree. Although the South Carolina courts have not been called upon to decide whether a "new" injury gives rise to a new cause of action--as have courts in other jurisdictions, see, e.g., Marinari v. Asbestos Corp., 612 A.2d 1021 (Pa.Super. Ct.1992)--we conclude that, even if the South Carolina courts were to adopt such a rule, it would not assist Barnes. It is uncontroverted, as Dr. Stands' letter of June 26, 1991 makes plain, that Barnes' hysterectomy was a result of the same gynecological problems that she had been experiencing since at least 1981. Thus, these problems cannot be considered a"new" injury.
 
 III.
 
 13
 In sum, viewed in the light most favorable to Barnes, the evidence is reasonably susceptible only to the conclusion that Barnes knew or through the exercise of reasonable diligence should have discovered that she had a cause of action no later than July 1984. Therefore, this action, filed in November 1991, was not timely filed within the limitations period. Accordingly, we affirm the judgment of the district court.
 
 AFFIRMED