Herbert L. DALEY and Evelyn Daley, h/w, Appellants

v.

A.W. CHESTERTON, INC. and U.S. Supply Company and Duro–Dyne Corporation, Appellees.

Superior Court of Pennsylvania.

Argued May 22, 2007.
Filed April 15, 2009.
Reargument Denied June 19, 2009.

Edward M. Nass, Philadelphia, for appellants.

Ryan Leonard, Philadelphia, for Chesterton, appellee.

Frank Friested, Philadelphia, for U.S. Supply, appellee.

BEFORE: MUSMANNO, GANTMAN, and PANELLA, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Herbert L. Daley and Evelyn Daley, h/w, (collectively "Appellant") ask us to determine whether the trial court erred when it granted summary judgment in favor of Appellees, A.W. Chesterton Inc., U.S. Supply Company, and Duro–Dyne Corporation, and dismissed Appellant's complaint with prejudice, based on the court's interpretation of *Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021, 1028 (1992) *(en banc)*. We hold the trial court misapplied the law in granting summary judgment in favor of Appellees based on the court's unduly restrictive interpretation of the separate disease rule in *Marinari*. Accordingly, we vacate the order granting summary judgment in favor of Appellees and remand the case to the trial court for further proceedings.

¶ 2 The trial court opinion sets forth the relevant facts and procedural history of the case as follows:

In October 1990, [Appellant] filed an asbestos action in the Delaware County Court of Common Pleas seeking compensatory damages for pulmonary asbestosis and lung cancer. [According to the 1990 Complaint, Appellant was diagnosed with asbestosis in 1989 and squamous-cell carcinoma of the right lung in 1990]. Said action resulted in an out of court settlement between the parties in 1994. [Appellees] were not named in that action.

Thereafter, on October 24, 2005, [Appellant] commenced the within [a]sbestos [m]ass [t]ort action against numerous defendants alleging that in August 2005, [Appellant] contracted malignant mesothelioma [1] as a result of his occupational exposure to asbestos products, including products distributed by [Appellees].

On July 19, 2006, [Appellees] moved for summary judgment, asserting that [Appellant's] statute of limitations began to run at the time [Appellant] was first diagnosed with lung cancer [in 1990]. [Appellees] argued that because [Appellant] had the opportunity to recover damages for the cancer claims in his first asbestos action and because he failed to bring any claims against [Appellees] in that action, his current claims are barred by the expiration of the two-year statute of limitations pursuant to [42] Pa.C.S. § 5524(2).

In response, [Appellant] argued that the action was timely filed because mesothelioma was a disease separate and distinct from lung cancer and therefore under [*Marinari, supra*], the statute of limitations did not begin to run until [Appellant] was diagnosed with mesothelioma in August 2005.

On September 11, 2006, after consideration of [Appellees'] motion and [Appellant's] response thereto, this court granted summary judgment in [Appellees'] favor and dismissed with prejudice all claims against [Appellees].

On October 2, 2006 [Appellant] timely filed this appeal. On October 31, 2006, in response to this [c]ourt's order, [Appellant] filed their Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925(b).

(Trial Court Opinion, filed January 8, 2007, at 1–2).

¶ 3 Appellant raises the following issues for our review:

WHETHER [APPELLEES'] MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS SHOULD HAVE BEEN

---

1. Mesothelioma is a malignancy involving the covering of the lung or the lining of the pleural and abdominal cavities; it is a rare disease associated with exposure to asbestos. *Vana-* *man v. DAP, Inc.*, 966 A.2d 603 (2009); *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643 (Pa.Super.2002), *appeal denied*, 574 Pa. 748, 829 A.2d 1158 (2003).

DENIED WHERE [APPELLANT'S] PRESENT CLAIM FOR MESOTHELIOMA IS FOR A DISEASE SEPARATE AND DISTINCT FROM HIS PRIOR CLAIM FOR LUNG CANCER?

WHETHER [APPELLEES'] MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS SHOULD HAVE BEEN DENIED WHERE [APPELLANT'S] SECOND ASBESTOS ACTION IS NOT BARRED BY HIS PREVIOUS ASBESTOS ACTION EVEN THOUGH IT WAS FILED BEFORE THE ADOPTION OF THE SEPARATE DISEASE [RULE IN THIS] JURISDICTION?

(Appellant's Brief at 5).

■ ¶ 4 Appellant first argues his current action was timely filed on October 24, 2005, because it was commenced within two (2) years after Appellant was first diagnosed with malignant mesothelioma in August 2005. Appellant avers his prior diagnosis of squamous cell carcinoma did not commence the statute of limitations for malignant mesothelioma, because mesothelioma is a separate and distinct malignancy of a different nature and not the natural, predictable progression of his prior lung cancer, for which he had been compensated in 1994. Appellant asserts this Court must allow his present action to go forward, based on current law.

¶ 5 Appellant observes that his 1990 suit was filed before *Marinari* was decided and did not settle until after *Marinari's* adoption of the separate disease rule, which allows separate causes of action for separate asbestos-related diseases. Under the separate disease rule, Appellant could not recover damages for fear and increased risk of asbestos-related diseases which he **might** contract in the future. Appellant contends there is no issue of

double recovery if his current case proceeds, because the 1994 settlement of the prior case did not include damages for mesothelioma. Appellant concludes this Court must reverse the summary judgment entered in favor of Appellees. For the following reasons, we agree that summary judgment was inappropriately entered at this stage of Appellant's case.

¶ 6 Initially, we observe:

Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine where there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [his] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evi

dence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court will disturb the trial court's order only upon an error of law or an abuse of discretion.

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.
>
> Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden.
>
> [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if ... charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power....

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super.2006) (internal citations omitted).

¶ 7 Pennsylvania Rule of Civil Procedure 1035.2 governs summary judgment as follows:

**Rule 1035.2. Motion**

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.
>
> Note: Rule 1035.2 sets forth the general principle that a motion for summary judgment is based on an evidentiary record which entitles the moving party to judgment as a matter of law.
>
> The evidentiary record may be one of two types. Under subparagraph (1), the record shows that the material facts are undisputed and, therefore, there is no issue to be submitted to a jury.
>
> An example of a motion under subparagraph (1) is a motion supported by a record containing an admission. By virtue of the admission, no issue of fact could be established by further discovery or expert report.

\* \* \*

Pa.R.C.P. 1035.2. "Summary judgment is proper if an action is barred by the applicable statute of limitations." *Devine v. Hutt*, 863 A.2d 1160, 1167 (Pa.Super.2004).

¶ 8 Statutes of limitations begin to run as soon as the right to institute and maintain a suit arises. *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850 (2005).

> Statutes of limitations are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is con-

stantly destroying the evidence of rights, they supply [the place of evidence lost or impaired by lapse of time, by raising a] presumption which renders proof unnecessary. Mere delay, extended to the limit prescribed, is itself a conclusive bar. The bane and antidote go together.

*Devine, supra* at 1167 (quoting *Gravinese v. Johns–Manville Corp.*, 324 Pa.Super. 432, 471 A.2d 1233, 1237 (1984)) (internal citations omitted). An action to recover damages for a disease caused by asbestos exposure must be commenced within two (2) years of the discovery of the disease. 42 Pa.C.S.A. § 5524(2).

▇ ¶ 9 Under the "separate disease" or *Marinari* rule, a plaintiff can bring another lawsuit for a distinct, separate disease due to asbestos exposure when the disease manifests. *Marinari, supra* at 1028. *See also McCauley v. Owens–Corning Fiberglas Corp.*, 715 A.2d 1125 (Pa.Super.1998) (holding plaintiff may bring subsequent action for separate disease resulting from asbestos exposure). Specifically,

> In such actions, recovery can be had in a first action only for a disease which has already manifested itself from the exposure to asbestos and the natural, predictable progression, if any, of that disease. If additional injuries from a separate disease manifest themselves in the future, such injuries will support a second action.

*Marinari, supra* at 1023. For purposes of identifying separate and distinct diseases, the *Marinari* Court stated:

> [A]sbestos exposure does not result in only one disease. The damage to the human body which may result from asbestos exposure does not occur as a seamless progression of a single pathology. Instead, exposure to asbestos may result in a variety of benign and malignant conditions, each of which may occur at widely divergent times. A non-exhaustive list and brief description of asbestos related diseases was recited by the Superior Court of Delaware in *Sheppard v. A.C. & S. Co.*, [498 A.2d 1126 (Del.Super.Ct.1985), *aff'd sub nom., Keene Corp. v. Sheppard*, 503 A.2d 192 (Del.1986) ], as follows:

> I. Nonmalignant diseases.
> A. Pulmonary asbestosis/Parenchymal asbestosis.
> B. Asbestos-related pleural disease/Pleural asbestosis. Pleural thickening is one major development of asbestos-related pleural disease. Other manifestations ... include pleural effusion, hyaline plaques, and calcified plaques.

> II. Malignant diseases.
> A. Lung cancer/Pulmonary carcinoma/Bronchogenic carcinoma.
> B. Mesothelioma (tumor of the mesothelial surface)....

> \* \* \*

> The non-malignant diseases may result when the body reacts to the inhalation of asbestos fibers which become imbedded in lung or other tissue. The reaction consists of the body "walling off" the foreign matter with fibrous cells such that it eventually produces scar-like tissue which builds up over many years.

> \* \* \*

> Pulmonary asbestosis or parenchymal asbestosis occurs within the lungs; pleural asbestosis occurs in the pleural cavity. Pleural thickening, one of the manifestations of pleural asbestosis, may occur independent of or in conjunction with pulmonary asbestosis.... Each of the diseases, *i.e.*, pulmonary asbestosis, asbestos-related

pleural disease, lung cancer, and mesothelioma, is recognized as a separate and distinct disease.

One or more of these diseases may occur in any one person at various times because of differing and often prolonged periods between exposure and manifestation of the disease. Thus, the diseases may be discovered at very different points in time.

*Id.* at 1024–25 (internal citations omitted).

¶ 10 Prior to *Marinari*, plaintiffs were required to file a single action for: (1) asbestos-related diseases that had already manifested; (2) fear of contracting asbestos-related diseases in the future; and (3) increased risk of contracting asbestos-related diseases in the future within two years of the initial discovery of an asbestos-related disease. *See Cathcart v. Keene Indus. Insulation*, 324 Pa.Super. 123, 471 A.2d 493, 500, 505, 507 (1984) (holding, "the statute of limitations begins to run in 'creeping disease' cases when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct"; "it should be clear that in Pennsylvania a plaintiff's claims for **all** injuries arising out of the same tortious conduct of a defendant must be brought within two years of the time that the plaintiff knows, or in the exercise of reasonable diligence should know, of his initial injury and that the injury was caused by someone's wrongful conduct" and concluding statute of limitations barred action to recover damages for work-related asbestosis filed more than two years after initial diagnosis of asbestosis); *Staiano v. Johns Manville Corp.*, 304 Pa.Super. 280, 450 A.2d 681, 689

(1982) (barring plaintiff's claim because each new disease did not reset limitations period).[2] Further:

Prior to *Marinari*, a single cause of action for all present and future harm as a result of an asbestos related disease accrued at the time when the first signs of the disease were discovered. Thus, to prevent the asbestos claim from being precluded by the statute of limitations, the plaintiff faced the arduous task of having to establish all future harm that may result from the contraction of the asbestos related disease. Although such a rule was workable in a routine personal injury case, it did not bring about just results in cases involving latent diseases which do not surface until years after the initial exposure.

*Simmons v. Pacor, Inc.*, 543 Pa. 664, 674–75, 674 A.2d 232, 237 (1996). *Marinari* remedied this situation through its holding, when Pennsylvania joined "a majority of jurisdictions which [had] adopted a 'separate disease' rule in asbestos exposure actions." *Marinari, supra* at 1022. Essentially, the Marinari Court held that the discovery of one asbestos-related pathology did not trigger the statute of limitations for a subsequent action based on a later, separately diagnosed asbestos-related pathology. *Id.* The Court reasoned:

The adjudicative process must ultimately serve the principle that a fair and just resolution of disputes depends upon a search for truth, based on factual, non-speculative evidence (the integrity of the process). Litigation by an injured citizen against another citizen must result in a recovery of adequate compensation by the one and payment by the other of

2. *See also Abrams v. Pneumo Abex Corp.*, 939 A.2d 388 (2007) *(en banc), appeal granted in part*, 597 Pa. 219, 951 A.2d 255 (2008) as to the following issue: "Does prior recovery of damages for increased risk and fear of developing cancer due to asbestos exposure,

awarded under the one-disease rule, preclude a plaintiff from recovering damages for cancer that developed and was diagnosed after the separate disease rule was adopted in [*Marinari, supra*]?" *Id.*

no more than fair and just compensation (the fairness of the result). In latent disease cases, such as the instant case, these principles of fair adjudication are not well served by the "rules developed against the relatively unsophisticated backdrops of barroom brawls, intersection collisions and slips and falls...." Fair resolution of claims for latent asbestos disease requires that we adopt a more enlightened approach and move [a]way from a blind adherence to rigid concepts of what constitutes a cause of action and toward a set of rules which will enable plaintiffs to recover for just claims where that is possible without prejudice to defendants or insult to established rules of law, such as the merger aspect of the rule of *res judicata.*

\* \* \*

In order to accomplish just results in the resolution of claims for latent asbestos diseases, the rigid rules designed to limit plaintiffs to a single lawsuit must yield.

*Id.* at 1027–28 (internal citations omitted). After Marinari, Pennsylvania law no longer allowed damages for fear and increased risk of developing cancer in the context of asbestos exposure. *Id.* This Court has actually applied *Marinari* to vacate damage awards for increased risk and fear of cancer in appeals that were pending when *Marinari* was decided. *See, e.g., Dempsey v. Pacor, Inc.,* 429 Pa.Super. 404, 632 A.2d 919 (1993) (holding separate disease rule abolished recovery of damages for fear and increased risk of cancer in cases where cancer had not yet developed). Where a plaintiff, however, was not compensated for a particular cancer or recovered damages based upon fear and increased risk of cancer in a prior suit, the plaintiff could initiate another suit when the plaintiff developed a distinct disease caused by asbestos exposure. *Giffear v. Johns–Manville Corp.,* 429 Pa.Super. 327, 632 A.2d 880

(1993) *(en banc), affirmed, Simmons, supra. See also Gatling v. Eaton Corp.,* 807 A.2d 283, 290 (Pa.Super.2002) (reiterating plaintiffs may file another action upon discovery of separate disease).

¶ 11 Instantly, Appellant filed his first suit in 1990 to recover actual damages for asbestos-related squamous cell carcinoma of the right lung and pulmonary asbestosis. Appellant filed his prior suit when asbestos plaintiffs were required to include a claim for fear and increased risk of cancer in cases where cancer had not yet developed. *See Dempsey, supra.* In 1990, Appellant was already suffering from an asbestos-related malignancy, so he did not seek damages for fear and increased risk of asbestos-related cancer. While his first suit was pending, this Court decided *Marinari.* In 1994, Appellant settled his 1990 case. Under *Marinari,* Appellant could not recover damages for future asbestos-related diseases, including mesothelioma. *See Marinari, supra* at 1025.

¶ 12 In August 2005, Appellant was diagnosed with mesothelioma, a separate and distinct disease from, and not the natural, predictable progression of, squamous-cell carcinoma. *See Vanaman, supra; Gutteridge, supra.* Appellant's mesothelioma diagnosis, therefore, gave rise to a separate cause of action. *See Marinari, supra.* Nothing in *Marinari* restricts Appellant from suing for the distinct asbestos-related disease of mesothelioma. *See id.*

¶ 13 In dismissing Appellant's 2005 cause of action, the trial court said:

[T]he two-disease rule, as adopted by Pennsylvania courts, permits a plaintiff to bring only one cause of action for nonmalignant diseases caused by asbestos exposure and then only one subsequent action for malignant diseases caused by that same asbestos exposure. Because [Appellant] previously brought an action for lung cancer, a malignant

disease, he cannot now bring a second action for mesothelioma, another malignant disease. The statute of limitations on [Appellant's] cause of action for malignant diseases expired two years from the date he was first diagnosed with lung cancer; therefore, his present action is untimely.

While this court understands [Appellant's] argument from a medical standpoint that mesothelioma is a disease separate and distinct from lung cancer, nonetheless, we are constrained to follow Pennsylvania precedent which allows a plaintiff to bring only one cause of action for each nonmalignant and malignant disease caused by asbestos exposure. Even viewing [Appellant's] mesothelioma as a separate and distinct disease, and thus, timely filed within two years of the diagnosis, [Appellant's] subsequent action would still be barred under Pennsylvania case law. Because [Appellant's] previous claim was for a malignant disease (lung cancer) he is precluded from bringing a second, separate claim for mesothelioma. [Appellant] has not provided, nor have we found, any Pennsylvania cases that permit a plaintiff to file an action for lung cancer caused by asbestos exposure and to then bring a second action for mesothelioma based on that same asbestos exposure.

(Trial Court Opinion at 4–5) (internal footnote omitted). We respectfully reject the trial court's narrow interpretation of Pennsylvania law. Although Pennsylvania case law frequently uses the nomenclature, "two-disease" rule, *Marinari* specifically stated it was adopting a "separate disease" rule in asbestos exposure actions, to do away with recovery of speculative damages, while preserving a plaintiff's right to recover for more than one asbestos-related disease, if a separate disease developed. The trial court's narrow interpretation of *Marinari* limits Appellant to a single cause of action for one malignant asbestos-related disease and a single cause of action for one non-malignant asbestos-related disease. We see nothing in *Marinari* to limit Appellant in that manner. *See id.* This limitation is just another form of the very mischief *Marinari* was designed to abolish with its separate disease rule. Contrary to the trial court's interpretation, we conclude *Marinari* permits separate causes of action for distinct diseases due to asbestos exposure. *See id.*

¶ 14 Based on the foregoing, we hold the trial court misapplied the law in granting summary judgment in favor of Appellees based on the court's unduly restrictive interpretation of the separate disease rule in *Marinari*. Accordingly, we vacate the order granting summary judgment in favor of Appellees and remand the case to the trial court for further proceedings.

¶ 15 Order vacated; case remanded for further proceedings. Jurisdiction is relinquished.