OPINION OF THE COURT
SCIRICA, Circuit Judge.
In the wake of the Three Mile Island nuclear accident in 1979, more than two thousand individuals brought suit for personal injuries. The forty-two plaintiffs in this appeal missed Pennsylvania’s two year limitations date,' and filed suit in Mississippi in order to fall within that state’s six year statute of limitations. These plaintiffs now challenge the retroactive application of the choice of law provision of the Price-Anderson Amendments Act of 1988, Pub.L. No. 100-408, 102 Stat. 1066. Retroactive application of the choice of law provision would require application of Pennsylvania’s statute of limitations to all actions arising from the Three Mile Island accident and would bar plaintiffs’ claims filed in Mississippi. Plaintiffs argue retroactive application of the choice of law provision violates federal constitutional guarantees of due process. Alternatively they argue that even if the Pennsylvania statute of limitations applies, Pennsylvania law provides for a grace period in which to file their claims. Because retroactive application of the choice of law provision was a rational exercise of Congress’ legislative power, we hold it does not violate due process. Additionally, we hold Pennsylvania law does not provide for a grace period under the circumstances of this case.
The same plaintiffs also challenge summary judgment rendered against them in actions they filed in Pennsylvania state court after the two year limitation date. They assert the statute of limitations should have been tolled under Pennsylvania law. Because plaintiffs have failed to raise a material issue of fact, we will affirm summary judgment.
I. Facts and Procedural History
On March 28, 1979, the Three Mile Island nuclear power facility located near Harrisburg, Pennsylvania released radiation into the atmosphere. As a result, thousands of area residents and businesses filed suit *1110 against the owners and operators of the facility, alleging various injuries.[1] In 1985, each of the forty-two plaintiffs involved in this appeal filed suit in Pennsylvania state court, Mississippi state court, and Mississippi federal court to recover for personal injuries allegedly suffered in the incident. The Mississippi actions were filed within that state’s six year statute of limitations for personal injury actions.
In September 1986, defendants moved for summary judgment in plaintiffs’ Pennsylvania state court actions contending each claim related to health problems diagnosed more than two years before plaintiffs commenced their suits. The Court of Common Pleas of Dauphin County, Pennsylvania entered summary judgment for defendants, finding plaintiffs’ claims barred by Pennsylvania’s two year statute of limitations. In re TMI Litig. Cases Consolidated II, No. 426 S (1985) (Dauphin Co. February 20, 1987); In re TMI Litig. Cases Consolidated II, No. 426 S (1985) (Dauphin Co. July 6, 1987). The Pennsylvania Superior Court affirmed. In re TMI Litig. Cases Consolidated II, 383 Pa.Super. 672, 550 A.2d 255 (1988).
Subsequently, Congress enacted the Price-Anderson Amendments Act of 1988, Pub.L. No. 100-408, 102 Stat. 1066, which created a federal cause of action — the “public liability action” — for injuries resulting from nuclear incidents, 42 U.S.C. § 2014(hh) (1988),[2] and provided for jurisdiction over and the consolidation of such actions in the federal district court in the district where the accident occurred, 42 U.S.C. § 2210(n)(2).[3] Defendants removed the Pennsylvania and Mississippi state cases to federal court in the Middle District of Pennsylvania pursuant to 42 U.S.C. § 2210(n)(2). At the time of removal of the Pennsylvania state cases, the time to *1111 appeal the grant of summary judgment to the Pennsylvania Supreme Court had not yet expired. The Mississippi federal actions were transferred to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).
After consolidation of the eases in the Middle District of Pennsylvania, defendants filed a motion for summary judgment with respect to the Mississippi state and federal court actions on the grounds that plaintiffs’ claims were untimely under the Price-Anderson Amendments Act of 1988. Section 11(b) of the Amendments Act, the choice of law provision (codified at 42 U.S.C. § 2014(hh) (1988)), provides that “the substantive rules of decision in [any public liability action] shall be derived from the law of the State in which the nuclear incident involved occurs.” Section 20(b) of the Amendments Act, the effective date provision (codified as a note to 42 U.S.C. § 2014), provides that “the amendments made by Section 11” of the Amendments Act “shall apply to nuclear incidents occurring before, on, or after the date of the enactment of this Act.” 42 U.S.C. § 2014 note (emphasis added). The district court held that § 20(b), read in conjunction with § 11(b), compels retroactive application of Pennsylvania’s two year statute of limitations to the causes of action brought by the plaintiffs, mandating the dismissal of the Mississippi state and federal cases as time barred. In re TMI Litig. Cases Consol. II, No. 88-1452, slip. op. at 2-6 (M.D.Pa. Aug. 16,1993). Plaintiffs do not dispute this reading of the Amendments Act on appeal.
Plaintiffs asserted before the district court that retroactive application of the choice of law provision would violate constitutional guarantees of due process. They also argued that Pennsylvania law, incorporated as federal law by the Amendments Act, would provide a grace period in which to file their claims. The district court rejected both arguments, id. at 15-20, and plaintiffs now appeal the district court’s grant of summary judgment.
The district court also adopted the prior judgment rendered by the Court of Common Pleas against plaintiffs in the Pennsylvania state cases. Id. at 23. Plaintiffs sought reconsideration of the grant of summary judgment, arguing that under the intervening holding of the Pennsylvania Superior Court in Marinari v. Asbestos Corp., 417 Pa.Super. 440, 612 A.2d 1021 (1992), their claims arising from “second injuries” should not have been dismissed.[4] Upon reconsideration, the district court ordered plaintiffs to specify which plaintiffs had “second injuries” subject to the Marinari rule. In re TMI Litig. Cases Consol. II, No. 88-1452, slip. op. at 13 (M.D. Pa. June 1, 1994). On July 12, 1994, the parties entered into a stipulation that Marinari did not relate to the “initial injury” claims which were the subject of defendants’ motion for summary judgment and that any “second injury” claims would be treated in a separate class action. In re TMI Litig. Cases Consol. II, No. 88-1452 (M.D.Pa. July 14, 1994). The district court then entered summary judgment against plaintiffs on the “initial injury” claims and dismissed them as time barred. In re TMI Litig. Cases Consol. II, No. 88-1452 (M.D.Pa. July 22, 1994). Plaintiffs appeal this order, arguing the statute of limitations had not expired on “initial injury” claims.
The district court had jurisdiction over these “public liability actions” under 42 U.S.C. § 2210(n)(2), and we exercise jurisdiction over the district court’s final orders under 28 U.S.C. § 1291. Our review of the district court’s grant of summary judgment is plenary. See F.D.I.C. v. Bathgate, 27 F.3d 850, 860 (3d Cir.1994).
II. Statutory Construction
The district court held the language of § 20(b) is unambiguous and “by its very *1112 terms clearly requires the retroactive application of all of the provisions of § 11, including the choice of law provision.” In re TMI Litig. Cases Consol. II, No. 88-1452, slip. op. at 3 (M.D.Pa. Aug. 16, 1993). Although plaintiffs have not challenged the district court’s reading of the Amendments Act on appeal, we exercise plenary review of the district court’s construction of the Act. Moody v. Sec. Pac. Business Credit, Inc., 971 F.2d 1056, 1063 (3d Cir.1992).
Section 20(b) unambiguously calls for the retroactive application of the choice of law provision in § 11(b). The choice of law provision in turn provides that “the substantive rules for decision” shall be derived from Pennsylvania law. Since the statute of limitations is a substantive rule of decision, Menichini v. Grant, 995 F.2d 1224, 1228 n. 2 (3d Cir.1993); 42 Pa. Cons.Stat. Ann. § 5524 (1981), we believe the Pennsylvania statute of limitations applies retroactively to plaintiffs’ causes of action filed in Mississippi.[5] Congress could have exempted statutes of limitations from retroactive application, but it did not. Accordingly, plaintiffs’ Mississippi causes of action are time-barred, unless some constraint imposed by the Constitution or state law prevents this result.[6]
*1113 III. Due Process
The district court held the choice of law provision of the Priee-Anderson Amendments Act requires application of Pennsylvania law, including the Pennsylvania statute of limitations, to the Mississippi state and federal cases. Plaintiffs argue the retroactive application of Pennsylvania’s statute of limitations to bar properly filed and already pending causes of action violates federal constitutional due process. Well-established precedent indicates that it does not.
A.
Under the United States Constitution, legislation affecting a pending tort claim is not subject to “heightened scrutiny” due process review because a pending tort claim does not constitute a vested right. See Hammond v. United States, 786 F.2d 8, 12 (1st Cir.1986) (plaintiff does not have a vested right in a tort cause of action until there is a final, unreviewable judgement); see also Arbour v. Jenkins, 903 F.2d 416, 420 (6th Cir.1990) (retroactivity of a statute does not make it unconstitutional as a legal claim affords no enforceable property right until reduced to final judgement); Sowell v. American Cyanamid Co., 888 F.2d 802, 805 (11th Cir.1989) (same). Other courts of appeals that have recently addressed the constitutionality of retroactive legislation that either abolishes or substantially affects a plaintiffs pending tort cause of action have reviewed such legislation on a “rational basis” stan dard. See, e.g., In re Consolidated U.S. Atmospheric Testing Litig., 820 F.2d 982, 990-91 (9th Cir.1987) (plaintiff challenging retro-activity bears the burden of showing that the legislature acted in arbitrary, irrational way), cert. denied sub nom. Konizeski v. Livermore Labs, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988); see also Hammond, 786 F.2d at 13. In In re TMI Litig. Cases Consol. II, 940 F.2d 832 (3d Cir.1991), cert. denied sub nom. Gumby v. General Pub. Utils. Corp., 503 U.S. 906, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992), we held that due process requires only that “the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means.” Id. at 860 (quoting Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 729, 104 S.Ct. 2709, 2717-18, 81 L.Ed.2d 601 (1984)). Accordingly, in order to show that retroactive application of the choice of law provision of the Amendments Act violates due process guarantees, plaintiffs bear the burden of showing that retroactive application was “irrational in purpose and effect.” Id. at 861. This they cannot do.
B.
Congress adopted the Amendments Act “to effect uniformity, equity, and efficiency in the disposition of public liability claims” arising from nuclear accidents. H.R.Rep. No. 104,100th Cong., 1st Sess., pt. 3, at 18 (1987). We believe retroactive application of the Amendments Act’s choice of law provision furthers each of these goals.
First, retroactive application of the Amendments Act’s choice of law provision uniformly applies Pennsylvania law to all plaintiffs. Second, retroactive application advances equity by applying the same law to all similarly situated plaintiffs and eliminating inconsistent results. While retroactive application of the choice of law provision requires dismissal of these plaintiffs’ claims which were filed in compliance with Mississippi’s six year statute of limitations, this result is not inequitable. These actions were time-barred in Pennsylvania when they were brought, and plaintiffs resorted to a distant forum in order to avoid Pennsylvania’s statute of limitations. Application of the law of the state in which the accident occurred, the *1114 plaintiffs live, and where the plaintiffs were allegedly injured is not inequitable.
Finally, retroactive application of the choice of law provision promotes efficiency by allowing the constitutional exercise of federal jurisdiction over, and the consolidation of, these “public liability actions.” Prior to the Amendments Act, the Price-Anderson Act provided for federal jurisdiction over only a limited class of cases — those arising from an “extraordinary nuclear occurrence.” Kiick v. Metropolitan Edison Co., 784 F.2d 490, 493 (3d Cir.1986); Stibitz v. Gen. Pub. Utils. Corp., 746 F.2d 993, 997 (3d Cir.1984), cert. denied, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). Because the Nuclear Regulatory Commission did not designate the Three Mile Island accident an “extraordinary nuclear occurrence,” the federal courts lacked subject matter jurisdiction to hear Three Mile Island cases filed in jurisdictions across the country. This situation resulted in “duplicative determinations of similar issues in multiple jurisdictions.” S.Rep. No. 218, 100th Cong., 1st Sess. 13 (1987), reprinted in 1988 U.S.C.C.A.N. 1476, 1488.
Congress sought to remedy the procedural problems plaguing the Three Mile Island cases by retroactively providing for federal jurisdiction over them and allowing their consolidation. But in creating federal jurisdiction, Congress was constrained by the constitutional principle that it cannot confer subject matter jurisdiction on federal courts where there is no underlying federal statute creating a federal question. See Osborn v. Bank of United States, 22 U.S. (9 Wheat) 738, 6 L.Ed. 204 (1824); Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983); see also In re TMI Litig. Cases Consol. II, 940 F.2d at 849 (“a case cannot be said to arise under a federal statute where there is nothing more than a jurisdictional grant.”). Congress was clearly aware of this constitutional constraint.[7] It did not, therefore, simply grant federal courts subject matter jurisdiction over all cases arising from nuclear accidents. Instead it created substantive federal law governing nuclear accidents in the choice of law provision of the Amendments Act by providing “the substantive rules of decision in [any public liability action] shall be derived from the law of the State in which the nuclear incident involved occurs.” 42 U.S.C. § 2014(hh). In the absence of the retroactive application of the choice of law provision to the Three Mile Island cases, Congress’ retroactive creation of federal jurisdiction over them in the Amendments Act would be *1115 nothing more than an unconstitutional grant of jurisdiction without any underlying substantive federal legislation creating a federal question. In re TMI Litig. Cases Consol. II, 940 F.2d at 854-55; O’Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1096-1101 (7th Cir.), cert. denied, — U.S. -, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994).[8] Accordingly, there is little doubt that the retroactive application of the choice of law provision has furthered the efficient and uniform processing of claims arising from the Three Mile Island accident by allowing those claims to be brought and to be consolidated in federal court.
Because retroactive application of the choice of law provision to pending causes of action advances Congress’ goals of uniformity, equity and efficiency in the disposition of claims arising from nuclear accidents, it is not arbitrary and irrational. Plaintiffs have not demonstrated retroactive application violates constitutional due process. Cf. O’Conner v. Commonwealth Edison Co., 13 F.3d at 1102 (retroactive application of Amendments Act not arbitrary and irrational); In re TMI Litig. Cases Consol. II, 940 F.2d at 860-61 (same).
IV. Grace Period under Pennsylvania Law
Plaintiffs also argue retroactive application of the Amendments Act’s choice of law provision does not require dismissal of the Mississippi actions. They assert the choice of law provision incorporates all Pennsylvania law as federal law, including a century-old line of Pennsylvania cases that holds due process requires a grace period when the legislature retroactively curtails a statute of limitations. See Kay v. Pennsylvania Railroad Co., 65 Pa. 269 (1870); Byers v. Pennsylvania Railroad Co., 18 Pa. Co. Ct. R. 187 (Allegheny Co. 1896); Philadelphia B. & W.R. Co. v. Quaker City Flour Mills Co., 282 Pa. 362, 127 A. 845 (1925); Ferki v. Frantz’s Transfer Co., 152 Pa.Super. 267, 31 A.2d 586 (1943); Wilson v. Central Penn Indus., Inc., 306 Pa.Super. 146, 452 A.2d 257 (1982). The district court declined to follow this line of cases, doubting its vitality in light of intervening developments in property law relating to vested rights, and refusing to read broad due process rights into the Pennsylvania Constitution on such a weak precedential basis.[9] In re TMI Litig. Cases Consol. II, No. 88-1452, slip. op. at 17-19 (M.D.Pa. Aug. 16, 1993). Even if the grace period doctrine retains force under the Pennsylvania Constitution, we do not believe the Pennsylvania Supreme Court would apply it under the facts of this case.
None of the Pennsylvania grace period cases addresses a situation in which *1116 Pennsylvania plaintiffs failed to sue within the time period allotted by the Pennsylvania statute of limitations and brought suit in another state’s courts to avoid Pennsylvania’s time bar. We believe the Pennsylvania borrowing statute, 42 Pa. Cons.Stat. Ann. § 5521 (1981), accurately reflects current state policy against “forum shopping” by applying to claims arising in another state either the other state’s statute of limitations or the Pennsylvania statute of limitations, whichever is shorter. “Pennsylvania’s borrowing statute unequivocally [evinces] the legislative intent to prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose.” Gwaltney v. Stone, 387 Pa.Super. 492, 564 A.2d 498, 503 (1989). We believe Pennsylvania courts would not look favorably on plaintiffs here who missed Pennsylvania’s statute of limitations, although Pennsylvania is the state where the accident occurred, and brought suit in Mississippi. Even if the Pennsylvania Supreme Court would require a grace period when the Pennsylvania legislature retroactively shortens a statute of limitations, we do not believe they would require a grace period in this case.
V. The Discovery Rule and Fraudulent Concealment
Plaintiffs in the Pennsylvania state cases appeal the district court’s grant of summary judgment on their “initial injury” claims.[10] First, plaintiffs argue the statute of limitations was tolled under the “discovery rule” until they knew or should have known their injuries were caused by the Three Mile Island accident. Plaintiffs assert there are material issues of fact as to whether they knew or should have known the cause of their injuries. Second, plaintiffs argue the statute of limitations was tolled because defendants fraudulently concealed information about the Three Mile Island accident.
A. The Discovery Rule
The discovery rule tolls the running of a statute of limitations until “the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party’s conduct.” Cathcart v. Keene Industrial Insulation, 324 Pa.Super. 123, 471 A.2d 493, 500 (1984) (in banc); see also Hayward v. Medical Ctr. of Beaver County, 530 Pa. 320, 608 A.2d 1040, 1043 (1992). Every plaintiff has a duty to exercise “reasonable diligence” in ascertaining the existence of an injury and its cause. Stauffer v. Ebersole, 385 Pa.Super. 306, 560 A.2d 816, 817, app. denied, 524 Pa. 622, 571 A.2d 384 (1989).
In their brief, plaintiffs assert that several plaintiffs filed their actions within two years of diagnosis of a specific injury, and thereby complied with the discovery rule. Under Pennsylvania law, plaintiffs bear the burden of proving they filed their claims within the applicable statute of limitations. See Osei-Afriyie v. Medical College of Pennsylvania, 937 F.2d 876, 884 (3d Cir.) (citing cases), cert. denied, 502 U.S. 979, 112 S.Ct. 581, 116 L.Ed.2d 606 (1991). Where, as here, the non-moving party bears the burden of proof at trial, summary judgment is appropriate if non-movants fail to “make a showing sufficient to establish the existence of an element essential to [their] case.” Nebraska v. Wyoming, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993). In responding to a motion for summary judgment, the non-moving party must “go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.” Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Beyond mere assertions, plaintiffs have not directed us to any evidence in the record that raises a material issue of fact as to whether any plaintiff filed suit within two years of discov *1117 ery of an “initial injury.” Accordingly, we believe summary judgment was appropriate.
Plaintiffs also argue that “because the [discovery rule] involves questions of what a reasonable person should have known, a classic jury question is invariably presented, thereby precluding the use of the summary judgment procedure.” Brief of the Appellants at 35-36. But the Court of Common Pleas held, and the record confirms, that the plaintiffs knew of the Three Mile Island accident,[11] and knew or should have known that exposure to radiation could cause adverse health affects. In such circumstances, the discovery rule does not toll the running of the statute of limitations.
Plaintiffs also assert summary judgment was improper because factual questions remain as to whether they used reasonable diligence to discover the cause of their injuries. The Court of Common Pleas held:
The responses to interrogatories ... reveal plaintiffs knew of their specific injury more than two years prior to the time they, filed their complaint. Thus, at that time they possessed the requisite knowledge to set the statutory clock running. Under the law of Pennsylvania they were under a duty to use all reasonable diligence to investigate the operative facts of their cause of action.... Given the notoriety of the accident and the plethora of investigative reports available to plaintiffs, it is clear that they had the “means of discovery” available to them.
In re TMI Litig. Cases Consolidated II, No. 426 S (1985), slip op. at 8-9 (Dauphin Co. February 20, 1987). Plaintiffs have not directed us to any evidence in the record that leads us to doubt these conclusions. Accordingly, we believe the district court properly granted summary judgment with respect to “initial injury” claims.
B. Fraudulent Concealment
Plaintiffs also argue the statute of limitations was tolled because defendants fraudulently concealed information relating to the Three Mile Island accident. See Molineux v. Reed, 516 Pa. 398, 532 A.2d 792, 794 (1987) (“Where through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations.”) (internal quotations omitted). In order to establish fraudulent concealment by a defendant, a plaintiff must prove “an affirmative or independent act of concealment that would divert or mislead the plaintiff from discovering the injury” or its cause. Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir.1991). But plaintiffs have not directed us to any evidence that defendants sought to conceal the cause of their injuries. While plaintiffs have referred to statements by defendants’ employees downplaying the seriousness of the accident immediately after it occurred, such statements do not create an issue of material fact with respect to fraudulent concealment.
In response to plaintiffs’ fraudulent concealment argument, the Court of Common pleas found:
The contention simply cannot prevail. Here, defendants did not “conceal” the fact that radiation escaped from the TMI facility. Defendants did nothing to induce plaintiffs not to file timely claims. In fact, the notice of the 1981 class action settlement, which was disseminated to all households within twenty-five miles of the reactor and widely publicized, put all persons on notice that if they believed they had a claim for personal injury, they should start their own lawsuit. This is not the type of conduct which could give rise to a claim of estoppel.
Moreover, given the vast amount of information available to plaintiffs concerning the nature and extent of the accident, it is not rationally possible to ascertain any basis from which plaintiffs could claim that defendants are estopped from asserting the limitations defense. Defendants engaged in no affirmative action which could *1118 have caused these plaintiffs to deviate from their right of inquiry.
In re TMI Litig. Cases Consolidated II, No. 426 S (1985), slip op. at 10 (Dauphin Co. February 20, 1987).
We agree that defendants’ statements could not have caused plaintiffs to deviate from their right of inquiry into the source of their injuries. The record reflects that voluminous information about the Three Mile Island accident was in the public domain.[12] Moreover, many other plaintiffs obtained sufficient information to file suit within the statute of limitations. Under these circumstances, plaintiffs’ have not raised a genuine issue of material fact with respect to fi*audu-lent concealment. Summary judgment was proper.
VI. Conclusion
The choice of law provision of the Price Anderson Amendments Act, 42 U.S.C. § 2014(hh), mandates the retroactive application of Pennsylvania’s two year statute of limitations to the plaintiffs claims filed in Mississippi state and federal court. Retroactive application comports with constitutional requirements of due process, and, in the circumstances of this case, Pennsylvania law does not provide for a grace period in which plaintiffs may file their claims. No issue of material fact precluded a grant of summary judgment based on the statute of limitations in the Pennsylvania state cases. For the foregoing reasons, we will affirm the judgment of the district court.

. Over two thousand plaintiffs' claims for personal injuries have been consolidated in the present litigation. See In re TMI, 67 F.3d 1103, 1105 (3d Cir.1995), cert. denied sub nom. General Public Util. Corp. v. Dodson, -U.S. -, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996). Some plaintiffs filed duplicative claims in both Pennsylvania and Mississippi.
In 1981, defendants settled non-personal injury claims brought by individuals, businesses, and non-profit organizations within a twenty-file mile radius of the Three Mile Island facility. See Stibitz v. General Pub. Util. Corp., 746 F.2d 993, 995 n. 1 (3d Cir.1984) (citing In Re Three Mile Island Litig., No. 79-0432 (M.D.Pa. Sept. 9, 1981)), cert. denied, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). In addition, hum dreds of claims involving allegations of personal injury were settled in 1985.
We have already resolved other issues raised on appeal by the plaintiffs. See In re TMI, 67 F.3d 1103 (duty of care); In re TMI, 67 F.3d 1119 (3d Cir.1995) (punitive damages), cert. denied sub nom. Metropolitan Edison Co. v. Dodson, -U.S.-, 116 S.Ct. 1560, 134 L.Ed.2d 660 (1996).

. The definition of “public liability action" appears at 42 U.S.C. § 2014(hh):
(hh) The term ‘public liability action', as used in [section 2210 of this title], means any suit asserting public liability. A public liability action shall be deemed to be an action arising under [section 2210 of this title], and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident occurs, unless such law is inconsistent with the provisions of such section.
42 U.S.C. § 2014(hh); see also Price-Anderson Amendments Act of 1988, Pub.L. 100-408, § 11(b), 102 Stat. 1066, 1076.

.The Price-Anderson Act, Pub.L. No. 85-256, 71 Stat. 576 (1957) (codified as amended in scattered sections of 42 U.S.C.), did not originally grant the federal courts jurisdiction over all claims arising out of nuclear accidents. ' The Price-Anderson Amendments Act expanded federal jurisdiction to reach all “public liability actions.” After amendment by the Price Anderson Amendments Act, the jurisdiction, removal, and consolidation provision of the Price-Anderson Act provided:
With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place ... shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant or of the Commission, or the Secretary, as appropriate any such action pending in any State court (including any such action pending on August 20, 1988) or United States district court shall be removed or transferred to the United States district court having venue under this subsection ...
42 U.S.C. § 2210(n)(2) (1988); see also Price-Anderson Amendments Act of 1988, Pub.L. 100-408, § 11(a), 102 Stat. 1066, 1076.
In In re TMI Litig. Cases Consol. II, 940 F.2d 832 (3d Cir.1991), cert. denied sub nom. Gumby v. General Pub. Utils. Corp., 503 U.S. 906, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992), we upheld the constitutionality of the retroactive application of this provision to cases arising from the Three Mile Island accident.

. When the Court of Common Pleas granted summary judgment, Pennsylvania was a “one-disease” state. This meant the statute of limitations for any claim arising out of exposure to a toxic substance began to run when the plaintiff knew or should have known of his "initial injury” resulting from exposure. See Cathcart v. Keene Indus. Insulation, 324 Pa.Super. 123, 471 A.2d 493 (1984) (in banc). Subsequently, Pennsylvania became a “two disease" state. Under this rule, the statute of limitations on a claim for a separate and distinct “second injury" related to a prior toxic exposure would not begin to run until the second injury manifested itself. See Marinari v. Asbestos Corp., 417 Pa.Super. 440, 612 A.2d 1021 (1992).

. Statutes of limitations are treated as substantive rules of decision for purposes of the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As the dissent points out, the intent of Erie was to ensure that "the outcome of the litigation in federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945).
We believe the Erie rationale is instructive in interpreting Congress’ command that "the substantive rules for decision in [any public liability action] shall be derived from the law of the State in which the nuclear incident occurs." 42 U.S.C. § 2014(hh); see also Price-Anderson Amendments Act of 1988, Pub.L. 100-408, § 11(b), 102 Stat. 1066, 1076. Although the legislative history is silent on the issue, we believe the clear language of this provision indicates an intent to ensure that the outcome of any public liability action arising from a single nuclear incident should be substantially the same as it would be if tried in the state where the incident occurred. The goal of achieving substantially the same outcome in all public liability actions, regardless of where filed, necessitates treatment of statutes of limitations as "substantive rules for decision.” We do not believe Pennsylvania law can answer whether Congress intended the term "substantive rules for decision” to include statutes of limitations.
Of course, because Pennsylvania courts do not sit in diversity, they will never have the occasion to decide whether to apply the Pennsylvania or the Mississippi statute of limitations to an action filed in Mississippi. But Pennsylvania courts generally "apply[] Pennsylvania's statute of limitations not only to wholly domestic causes of action but also to causes of action arising in other jurisdictions (unless, pursuant to Pennsylvania's borrowing statute, a Pennsylvania court is directed to apply a shorter limitation statute of another jurisdiction.)" AAMCO Transmissions, Inc. v. Harris, 759 F.Supp. 1141, 1143-44 (E.D.Pa.1991) (footnotes omitted).

. Section 20(b) provides that "the amendments made by Section 11" "shall apply to nuclear incidents occurring before, on, or after the date of the enactment of this Act." The dissent contends that the words "shall apply” may be interpreted in two ways: as requiring the application of Pennsylvania law from the date of filing of pending suits, or from August 20, 1988 forward. The dissent asserts the former interpretation necessitates imposition of a “historical fiction," while the latter merely "attaches new legal consequences to events completed before [] enactment [of the Amendments Act].” Dissent at 1118— 19.
But we do not create a historical fiction that plaintiffs filed suit on any date other than that on which they actually filed. We simply attach new legal consequences to the fact that the filing date was not within two years of the Three Mile Island accident. In sum, we apply Pennsylvania’s statute of limitations retroactively, as the clear language of § 20(b) and § 11 (b) demands. The dissent, on the other hand, attaches no legal consequences to the application of Pennsylvania's statute of limitations. In fact, the dissent does not apply the Pennsylvania statute of limitations retroactively at all, but only prospectively to suits brought after the enactment of the Amendments Act. It refuses to apply the statute of limitations retroactively, despite the clear language that Pennsylvania law “shall apply,” and even though it acknowledges that rulings made prior to the passage of the Amendments Act on the basis of substantive law which no longer applies should be modified to conform to the new governing law of the case. Dissent at 1119.
We believe the unambiguous language of § 20(b) and § 11(b) calls for the retroactive application of all of Pennsylvania law, including the statute of limitations. It is difficult to conceive of a clearer formulation than the "shall apply” language in § 20(b). In fact, in Landgraf v. USI Film Products, 511 U.S. 244, -, 114 S.Ct. 1483, 1494, 128 L.Ed.2d 229 (1994), the Supreme Court considered virtually identical language to have "a determinate meaning" mandating retroactive application of legislation. See id. *1113 (language such as "the new provision 'shall apply to all proceedings pending on or commenced after the date of enactment’ " mandates retroactive application). The dissent invokes the often stated presumption against retroactive legislation. Dissent at 1118-19. But if Congress has "expressly prescribed” a statute should apply retroactively, "there is no need to resort to judicial default rules.” Landgraf, 511 U.S. at-, 114 S.Ct. at 1505. The dissent also asserts that its interpretation accords with Congressional intent. Yet it has not offered any evidence that Congress intended to except statutes of limitations from retroactive application.
Finally, we note that plaintiffs have not argued that § 20(b) is ambiguous or that it exempts statutes of limitations from retroactive application.

. In its report, the Senate Committee on Environment and Public Works stated the choice of law provision was essential to creating federal jurisdiction over public liability actions:
[In order to] avoid the inefficiencies resulting from duplicative determinations of similar issues in multiple jurisdictions that may occur in the absence of consolidation ... the bill provides the federal district court in which the nuclear incident occurred with subject matter jurisdiction over claims arising from the nuclear incident. [The choice of law provision provides that] [a]ny suit asserting public liability shall be deemed to be an action arising under the Price-Anderson Act, and the substantive law of decision shall be derived from the law of the State in which the incident occurred, in order to satisfy the Article III requirement that federal courts have jurisdiction over cases arising under the Constitution or the laws of the United States.
S. Rep. No. 218, 100th Cong., 1st Sess. 13 (1987), reprinted in 1988 U.S.C.C.A.N. 1476, 1488 (emphasis added).
The House Committee on Interior and Insular Affairs came to the same conclusion. Reporting on H.R. 1414, the House version of the Amendments Act, it explained:
The Committee recognizes, of course, that Article III of the Constitution limits the type of cases that federal courts created under the Article may hear. For this reason, H.R. 1414 expressly states that any suit asserting public liability shall be deemed to be an action arising under the Price-Anderson Act, thereby making suits asserting public liability "Cases ... arising under ... the laws of the United States” within the meaning of Article III. Rather than designing a new body of substantive law to govern such cases, however, the bill provides [in the choice of law provision] that the substantive rules for decision in such actions shall be derived from the law of the state in which the nuclear incident involved occurs, unless such law is inconsistent with the Price-Anderson Act. The Committee believes that conferring on the Federal courts jurisdiction over claims arising out of all nuclear incidents in this manner is within the constitutional authority of Congress and notes that Congress has used this approach in the Outer Continental Shelf Lands Act.
H.R.Rep. No. 104, 100th Cong., 1st Sess., Pt. 1, at 18 (1987).

. Congress explicitly stated that the jurisdiction and consolidation provision of the Amendments Act should apply retroactively to pending causes of action. See 42 U.S.C. § 2210(n)(2) (Amendment Act's consolidation and removal provision shall apply to all public liability actions, “including any such action pending on August 20, 1988”). Congress understood that the jurisdiction and consolidation provision could not pass constitutional muster without the choice of law provision. Accordingly, we believe Congress intended the choice of law provision also to apply retroactively.
Moreover, even if retroactive application of the choice of law provision is not constitutionally essential, Congress at least had to create a federal cause of action for cases arising out of nuclear incidents before the district court could exercise jurisdiction. It did this in § 11(b) of the Amendments Act — the section in which the choice of law provision is contained — by defining a "public liability action." If § 11(b) does not apply retroactively, we do not have jurisdiction over the plaintiffs' claims because there was no federal cause of action under the Price-Anderson Act prior to its passage. Stibitz v. General Pub. Utils. Corp., 746 F.2d at 996.

. Most of the cited cases base their imposition of a grace period on the due process clause of the Fourteenth Amendment of the United States Constitution or on cases construing the Fourteenth Amendment. See, e.g., Quaker City Flour, 127 A. at 846-47; Ferki, 31 A.2d at 587-88; Wilson, 452 A.2d at 260. These cases treat an accrued tort cause of action as a “vested right” under the United States Constitution, see Jenkins v. Hospital of Med. College, 535 Pa. 252, 634 A.2d 1099, 1104-05 (1993), and are contrary to current federal constitutional precedent that finds no vested right in a tort cause of action before final judgment, see, e.g., Arbour, 903 F.2d at 420; Hammond, 786 F.2d at 12. They also conflict with current case law that finds no Fourteenth or Fifth Amendment due process violation in rational, retroactive legislation not affecting vested rights. See, e.g., In re TMI Litig. Cases Consol. II, 940 F.2d at 860-61; Sowell, 888 F.2d at 805; In re Consolidated U.S. Atmospheric Testing Litig., 820 F.2d at 990-91.

. The district court originally adopted in its entirety the prior judgment rendered by the Dauphin County Court of Common Pleas against plaintiffs in the Pennsylvania state cases. In re TMI Litig. Cases Consol. II, No. 88-1452, slip. op. at 23 (M.D.Pa. Aug. 16, 1993). Upon reconsideration, the court limited the state court's holding to "initial injury” claims. It then entered summary judgment against plaintiffs on the "initial injuiy” claims and dismissed them as time barred. In re TMI Litig. Cases Consol. II, No. 88-1452 (M.D.Pa. July 22, 1994):

. Although plaintiffs did not file suit until almost six years after the Three Mile Island accident, they were able to answer in detail defendants’ interrogatories on how they came to know of the accident, and where they were during the course of the accident. Some plaintiffs even left the geographic area in response to the accident.

. The Three Mile Island accident was the subject of extensive investigation and exhaustive reports long before plaintiffs were diagnosed with their illnesses or brought suit. See Pennsylvania v. General Pub. Util. Corp., 710 F.2d 117, 118 n. 1 (3d Cir.1983).